On May 12, 2014, this Court issued a decision in Chandra v. Holder that recognized that a change in personal circumstances, coupled with a change in country conditions, is a valid and adequate basis for a motion to reopen. Mr. Singh has shown that his homosexuality was a change in his personal circumstances that is material and that, at the time of his initial hearing, was unavailable, and that, in fact, country conditions had changed in India for homosexuals. Can you tell me why it wasn't available? My understanding, to make sure I'm not misunderstanding the facts, is that the difference is his announcement or his public acknowledgment of his homosexuality, but you just said this was not available to him? Do you mean that the news had not been released? Right. He had not come out publicly. There was a number of different issues regarding his homosexuality. First of all, he had not come out publicly. His family in the United States was not aware of his homosexuality. Also his family and friends back in India were not aware of his homosexuality. So even though, in fact, apparently, based on the information in his affidavit, he always felt that he was a homosexual, he had not come out in any public way, his family was not aware, nor his family back in India, and that, in fact, is a change in his personal circumstances, somewhat akin to the case of Chandra, where there was perhaps a conversion to Christianity. It could be argued perhaps the person was always a Christian, but had not come out or made an official conversion. I think it's very similar to the facts here under this case, where the fact of whether or not he was homosexual, but him coming out, I think was really the seminal point, and when that was made public, both in the United States and back in India, that is a change that was unavailable at the time of his initial hearing. What do we do with the fact that the IJ made an adverse credibility decision about your client? That's been affirmed by our court in their most recent ruling. They say your evidence hasn't overcome that adverse credibility finding, so the rest of it is irrelevant. Right. The adverse credibility finding went to the strength of his testimony regarding whether or not he was persecuted as a suspected Sikh militant in India. When we filed a motion to reopen, what we asked for was also a motion to re-enact so that we could bring this new information before the court regarding his homosexuality. That's not been attacked in any meaningful way. Whether or not the immigration judge found him incredible as to whether or not he was an active participant in Sikh groups back in India really doesn't touch upon at all whether or not, in fact, he would be persecuted in India based on his homosexuality. The information that we cited for reopening that had changed back in India specifically was an August 27, 2008, law and ministry of India had rejected a demand by the health ministry to legalize homosexuality. The second information that had changed in India, a subsequent event after his initial hearing was the Indian government was opposed to the dismissal and remand of a challenge to Section 377 of the Indian Penal Code. Section 377 criminalizes sexual intercourse between members of the same gender, and it is punishable in India by life imprisonment. Could I ask, are those changes in circumstances, or was that the status quo earlier? It – that legal section does seem to have been the status quo, but it – obviously, these types of issues have been coming more to the forefront in India, and that's what we've argued based on this evidence. But, I mean, both of the examples you gave are refusals to change the status quo, not changes in the status quo. I'm sorry. Both the examples you gave are refusals to change the status quo, not changes in the status quo, right? I would agree with that. And Chandra, as I read it, doesn't say that there doesn't have to be a change in the circumstances, the country's circumstances. It says there doesn't have to be solely a change in the country's circumstances. Correct. So how do you come within it? Within Chandra? Yes. I think, well, the argument that we have made in this – in our brief is that since he has come out publicly with his homosexuality – Well, he's changed, but how has the country changed? Well, I'm sure the point – I mean, do you agree that the country has to change also? Yes, I think – Okay, so how does the country change? I think it has. I mean, it has always been illegal in India, apparently, regarding homosexuality, but the government has taken a more proactive stance, and the third – Its proactive stance is that we're not going to change anything. Correct. But I think it has – what we've argued and the evidence that we've put in our motion to reopen is that the government has taken a bit more of a proactive stance, and the third example that I was going to get to was in December 2008, the Indian government submitted a report asserting that legalizing homosexuality would lead to more cases of HIV-AIDS. So what we've argued is that it's become more a political issue in India. There's been more litigation. It's come to the forefront, both in public and in the media, and that it's created a more heightened sense of anti-homosexuality in India. That's the evidence that we have. I'm not saying the laws have changed. I'm not saying they've criminalized it recently, but that is the information that we've been able to put together regarding what contributions have changed between the initial hearing and his subsequent motion to reopen and after he came out as a homosexual. Now, we've already looked at the argument and affirmed – rejected the argument in the prior appeal on that, correct? Correct. So what has changed in his – I mean, he was open then. So you're saying that there's now evidence that gay men will be more likely to be persecuted than they were when we addressed this issue before? Well, I think what's changed, obviously, is the case that I've cited, the Chander case, because if you look with the BIA, the BIA said in their decision is that a motion reopened based on changed circumstances is barred both by statute and regulation, and they cite to a matter of CWL and Chen v. McCasey that, in fact, is not currently the state of the law. So the BIA did not look at this issue at all, whether or not this change in personal circumstances was sufficient. They're saying we're not even going to look at it. And what about our prior decision? I think the – He failed to provide material country conditions. He – his revelation of his homosexuality to his family is a personal condition that has not provided basis for a motion to reopen. What is different now from the 2009 case? Chander v. Holder. But – That is the change, Your Honor. Well, first of all, even if so, do you get to come back again? Because even though you've already – don't you have a race-judicata problem no matter – even if there's been a change? Well, I think what we've done is we've added additional country condition information. That's something different. And I think there has been a subsequent change in the law, and the BIA was unwilling to see it. Is this the only issue you're going to argue? No. Well, I had the subsequent issue also, whether or not there was changed country conditions regarding his political opinion and persecution of Sikh militants. So you're not arguing about the stay for purposes of change of status? I'm sorry. I didn't understand. About the change of status issue. You're not arguing about that? Change of status as far as? I'm not sure if I understand that. I thought you had another issue, but I guess you don't. No, I don't. I'll reserve the rest of my time for rebuttal if I may, unless there are any other questions. Are you not trying to re- just so I'm clear, you're no longer trying to reopen the BIA removal in order to pursue a U visa? That's out of the picture. That's the next case. The U visa, did you say? Yes. Correct. You're not doing it anymore? No. You might have told us. Okay. What? Good morning, Your Honors. I'm Blair O'Connor on behalf of the Attorney General. As an initial matter, I would note that the reason may counsel is not pursuing the U visa, as I checked with my client yesterday, and the U visa was adjudicated and denied in October of 2010, thereby essentially mooting that issue. But somebody might have told us that. Yes, Your Honor. I just found out myself. Either you or your opponent. Your Honors, the Board did not abuse its considerable discretion in denying petitioners untimely a numerically barred third motion to reopen. To the extent this motion was based on alleged changed country conditions regarding the general police violence in India and the treatment of those accused associated with Sikh militants and terrorists, the Board correctly noted that this was the same basis for the petitioner's original asylum claim, which it found to be not credible and which was upheld by both the Board and this Court. And to the extent the motion was based on petitioner's homosexuality, the Board properly found that his coming out and telling his family that he was homosexual was a changed personal circumstance and that the changed country conditions were in no way different from those that existed in the second motion reopened, which the Board had denied and which again, the denial was upheld by this Court in 2009. Therefore, we would say that this petition for review should be dismissed. Now, regarding petitioner's homosexuality, again, notwithstanding Chandra, it is correct to say that his opening up and coming out about his homosexuality was a changed personal circumstance. And with respect to the alleged changed country conditions in India, there is nothing in any way material different from the evidence submitted in the third motion reopened, which is currently before this Court, than that that was submitted in the second motion reopened, which was denied and this Court upheld again in 2009. Petitioner's opening brief regarding this issue primarily cites the evidence that was submitted with that second motion reopened, which this Court has already reviewed and said that that was not materially changed country conditions. The only thing that was new that was cited was a more recent State Department report on India, but that report was substantially the same as the report that was submitted with the second motion reopened. So it is correct, the Board is entirely correct to note that this issue had already been decided and resolved in its 2005 decision denying the second motion reopened, and there had been nothing new that was a material change regarding the way the Indian government treated homosexuals in the most recent motion reopened that this Court is reviewing. And with respect to the evidence that was submitted in the recent motion reopened regarding, again, general police violence and abuses in India and the treatment of alleged Sikh militants and terrorists, again, what's fatal to this claim is that Petitioner has done nothing to rehabilitate the adverse credibility determination which this Court upheld and has previously upheld. This claim is essentially the same as his original asylum claim, which the IJNA Board found was not credible. Therefore, if he's bringing the same claim, first and foremost, he must demonstrate why that determination was wrong. He must rehabilitate his credibility in order to do that, and his failure to even address that in any way, shape, or form is fatal to that claim. There's no reason for the Board to go on and address hundreds of pages of evidence regarding general police violence in India when he has not first and foremost demonstrated why his credibility on the original claim, which is the same basis, was, in fact, should have been deemed credible. He didn't mention, counsel did not mention it in his opening argument. And he raised the issue of the battered spouse statute. It was not dealt with by the BIA on a constitutional issue. And I don't think you responded to it in your briefs. Looking at the statute, the language talks about same, it talks about spouses. Is there, and there's no evidence as I understand in this record that there's any spousal status in the case of Mr. Singh. But, so my general question is, the spouses have been interpreted to mean heterosexually officially married spouses. Is that what it has to be? For example, would it extend to common law relationships? At the time of the Board's decision, Your Honor, that is correct. It was interpreted as being heterosexual marriages. Now, today, obviously, with the Supreme Court's Windsor decision, CIS is applying that to same-sex marriages as well. But we would note in that regard that nothing prevented the alien, regarding the change of law, of filing a motion to reopen with the Board, so it can address this in the first instance. I mean, Ventura principles would dictate that this court not get ahead of the Board on that issue, which is obviously a very important politically sensitive issue. He could have filed a motion to reopen when the government decided not to defend DOMA, and especially after the Supreme Court's Windsor decision. And we would note, again, one reason he may not have done that is he currently does have a motion to reopen pending before the Board based on an approved I-130 filed by his U.S. citizen female spouse. He's currently married to a woman, and they have a U.S. citizen child. And that may be, again, why he's not pursued the VAWA claim. But that's an issue he should have taken up initially with the Board, given the significant change in the law regarding that issue. Thank you. Barney, any other further questions from the Court? Again, we would note the UPS issue is essentially mooted, but also we would note the general principle that it does go to the Board's sua sponsa reopening decision, which this Court has held that it lacks jurisdiction to consider as well. Because it was untimely anyway. Yes, Your Honors. So we would ask, the government would ask this petition for review be denied. Thank you, Your Honors. Thank you. I didn't have anything further in rebuttal unless there's any further follow-up questions by the panel. No. Thank you. Thank you.
judges: FISHER, BERZON, CHRISTEN